IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Marcus Walker, )
    Plaintiff, )
 )
v. ) 1:10cv889 (AJT/TRS)
 )
Conmed Healthcare Management, et al., )
    Defendants. )

MEMORANDUM OPINION

Marcus Walker, a Virginia inmate proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983, alleging the defendants exhibited deliberate indifference to his medical needs relating to a tumor in his mouth. Defendants Warren Hercules, Pam Smith, and Marquette Williams each filed a Motion to Dismiss and/or Motion for Summary Judgment, arguing that Walker failed to state a claim that is plausible on its face against each of them. Defendant Conmed Healthcare Management filed a Motion to Dismiss/Motion for Summary Judgment, arguing that Walker has not alleged facts from which the Court can infer a basis for Conmed's liability in this matter. Walker was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and has filed a response as well as a Motion to Amend Response to Plaintiff's Request for Documents and Motion to Appoint Counsel. For the reasons that follow, defendant Conmed Healthcare's Motion to Dismiss will be granted and defendants Warren Hercules, Pam Smith, and Marquette Williams' Motions to Dismiss/Motions for Summary Judgment will be denied. Plaintiff's Motion to Appoint Counsel and his Motion to Amend Response to Plaintiff's Request for Documents will both be denied.

1

## I. Background

Plaintiff Marcus Walker was an inmate at Chesapeake Correctional Center in Chesapeake, Virginia from October 5, 2009 until June 22, 2010, when he was moved to Mecklenburg Correctional Center in Boydton, Virginia. On or around November 4, 2009, Walker began to complain about a "knot on or in [the] gum area and severe pain above teeth." See Compl. at 18, ECF No. 1. Walker's mouth was lanced and drained, but the problem returned one week later. Walker "informed staff that he was seen by them on a previous complaint in 2005 and was sent for a [CAT] scan which revealed it was a sis [sic] or tumor and it was not cancerous or nothing to worry about." Id. Staff members gave Walker a prescription for pain medication and said there was "nothing they could do about it." Id.

Medical records reflect that Walker received a CT scan of the maxilliofacial region at Chesapeake General Hospital on May 26, 2005 with the stated purpose being to "evaluate for right maxillary mass." See Mot. to Dismiss at 7, ECF No. 22. Based on the findings, a follow-up MRI of the pituitary gland was recommended. It appears that Walker received no follow-up or further treatment of this condition until 2009. Id.

Walker filed several medical complaints about headaches and high blood pressure after the treatment in November 2009. He was taken to Chesapeake General for another CAT scan in December, which was ordered by Dr. Hercules. See Compl. at 18, ECF No. 1; Mot. to Dismiss at 8, ECF No. 22. The CAT scan revealed that the "mass or growth behind [his] gum and face had started to grow." See Compl. at 18, ECF No. 1. The December 2009 CT scan could not be compared to the 2005 CT scan because the 2005 scan was "checked out to [Plaintiff] in 2005." See Mot. to Dismiss at 8, ECF No. 22.

2

Walker and his mother (Clara Boone) verbally complained to Dr. Marquette Williams (Medical Administrator), Pam Smith (Director of Nurses), and Dr. Hercules (physician) about Walker's "blurred vision, blockage of nasal canal which made it difficult to breathe because of already existing problem with asthma, choking on blood draining in throat at night while sleeping, and severe headaches," and Walker also filed written complaints. See Compl. at 18, ECF No. 1. Walker was told that other inmates needed attention first, and "it was not their concern because it was [a] pre-existing problem." Id. Williams and Hercules also told Walker that "nothing could be done because of an issue with another inmate concerning outside physician." Id. Hercules explains that the process of finding an ENT or oral surgeon to treat Walker was "complicated by the unwillingness of a provider contacted by Dr. Hercules to evaluate [Walker], given an earlier incident involving another inmate." See Mot. to Dismiss at 8, ECF No. 22.

In February 2010, Walker was sent to an outside ear, nose, and throat (ENT) doctor to evaluate the blockage in his nasal canal, and he referred Walker to an oral surgeon. See Compl. at 18-19, ECF No. 1. Walker was sent to see Dr. Morrison for a consultation on March 26, 2010, who apparently ordered surgery to be done as soon as possible "because the mass behind face had grown the size of a small fist." Id. at 19; see also Mot. to Dismiss Ex. 11 at 1, ECF No. 22-11 (note stating "Doctor call me ASAP" and providing Dr. Morrison's telephone number). A biopsy was performed by Dr. Morrison on April 1, 2010, which determined that the mass was an ameloblastoma tumor. See Compl. at 19, ECF No. 1. Dr Morrison's notes from surgery indicate that Walker's case was "rather unusual" because Walker "claims to have had this mass in his right maxillary extending to his right maxillary sinus for 5 years" and "has been in and out of the [sic] incarceration and has never had it taken care of." See Mot. to Dismiss at 8, ECF No. 22. A

biopsy sample was provided to pathology for evaluation and the results were given to Dr. Morrison. Id.

Walker alleges that the "very aggressive" ameloblastoma tumor "caused severe damage to gum area, and facial tissue had to be removed." See Compl. at 19, ECF No. 1. He suffered "undue pain and suffering, and loss of large section of gum area, tissue behind face and nasal canal, and dental damage." Id. He asserts that "if problem had been addressed when [he] first started complaining, damage could have been minimized." Id. Walker also complains that he was given "over 2000 mg of Tylenol a day for over 30 days at which time fingernails turned blue because of toxin and possible liver damage that was never treated." Id. He states that Dr. Morrison determined "that definitive surgery is a must because of the nature of this tumor...[ and it] will continue to grow and cause more pain and suffering along with facial structural damage." Id. Walker filed numerous grievances and appeals about this issue. Id. at 20-21.

Walker was sent to an ENT doctor (Dr. Daniel W. Karakla) at Sentara Norfolk Hospital on May 25, 2010. The doctor determined that Walker had loss of teeth that would require a partial plate and would have to have reconstructive surgery as well as tissue grafting and possible hospitalization. Id. at 21. The doctor wrote to Dr. Morrison after the evaluation and advised "maxillofacial CT along with head CT." See Mot. to Dismiss at 9, ECF No. 22. He also stated that Walker's case "will be presented at the upcoming EVMS [Eastern Virginia Medical School] Multidisciplinary Head and Neck Tumor Conference." Id. Based on information he received from Dr. Karakla, Dr. Hercules requested additional evaluation of Walker by Dr. Robert Kenny, DDS. Id.

4

In his complaint, Walker names Dr. Hercules, Nurse Pam Smith, and Marquette Williams as defendants. He is seeking $5,000,000.00 in damages.[1] Walker includes copies of grievances and health service request forms that he filed on February 14, 2010, March 8, 2010, March 26, 2010, April 2010,[2] May 2, 2010, May 16, 2010, and May 20, 2010 as exhibits. See Compl. at 9-17, ECF No. 1.

## II. Conmed Healthcare

A. Standard of Review: Motion to Dismiss

Rule 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When determining whether a motion to dismiss should be granted, the alleged facts are presumed true and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...". Twombly, 550

---

[1] It is unclear whether Walker intended to name Conmed Healthcare as a defendant in this lawsuit since Conmed is only listed as the employer of the other defendants. Nevertheless, Conmed's Motion to Dismiss will be granted.

[2] The exact date of this health services request form is illegible. See Compl. at 13, ECF No. 1.

U.S. at 55. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-1950.

Courts may also consider exhibits attached to the complaint. United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed.1990), cited with approval in Anheuser-Busch v. Schmoke, 63 F.3d 1305, 1312 (4th Cir.1995)). Moreover, where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." Gulf Ins. Co., 313 F. Supp. 2d. at 596 (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir.1991)).

B. Analysis

District courts have a duty to construe pleadings by pro se litigants liberally, however, a pro se plaintiff must nevertheless allege a cause of action. Bracey v. Buchanan, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). To state a cause of action under § 1983, a plaintiff must allege facts indicating plaintiff was deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42 (1988). Thus, each named defendant must have had personal knowledge of and involvement in the alleged violations of plaintiff's constitutional rights for the action to proceed against him. Walker has not stated a claim against Conmed Healthcare Management because he has not demonstrated that Conmed had personal knowledge of or involvement in the alleged violations of Walker's constitutional rights.

Moreover, Walker has not demonstrated that Conmed is liable to him in a supervisory capacity. Supervisory officials may be held liable in certain circumstances for the constitutional

injuries inflicted by their subordinates. See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984)). This liability is not premised on respondeat superior, but upon "a recognition that supervisory indifference or tacit authorization of subordinates misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. at 798 (quoting Slankan, 737 F.2d at 372-73). "[L]iability ultimately is determined 'by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" Id. at 798 (quoting Slakan, 737 F.2d at 376). In order to establish supervisory liability under § 1983, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted). Walker offers no facts demonstrating that Conmed had actual or constructive knowledge that its subordinates were engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to Walker. Thus, he fails to allege any facts indicating that Conmed is liable to him, and his claims against Conmed must be dismissed.

### III. Defendants Dr. Hercules, Nurse Pam Smith, and Dr. Marquette Williams

A. Standard of Review: Motion for Summary Judgment

In reviewing the Motion for Summary Judgment by defendants, courts must view the facts in the light most favorable to the party opposing the motion. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Summary judgment is appropriate where "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."

7

Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine" issue of material fact is present "if the evidence is such that a reasonable jury could . . . return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "When a motion for summary judgment is made and supported . . . [by affidavits], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment. Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir. 1994); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988).

B. Analysis

To state a claim of inadequate medical care that rises to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105 (1976); see also Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. Second, he must allege deliberate indifference to that serious medical need. Under this second prong, an assertion of mere negligence or malpractice is not enough to state an Eighth Amendment violation; instead, plaintiff must allege and demonstrate "[d]eliberate indifference . . . by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see Estelle, 429 U.S. at 106. In other words, plaintiff must allege facts demonstrating that each defendant's actions were "[s]o grossly incompetent, inadequate, or

8

excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted).

Here, the Court will assume without deciding that the facts relating to Walker's tumor constitute a serious medical need.[3] Defendants argue that they made "prompt and diligent efforts...to secure appropriate and timely care and treatment for [Walker]." See Brief at 6, ECF No. 25. Defendants assert that these efforts demonstrate that they were not deliberately indifferent to Walker's serious medical needs. Id. However, a delay in medical treatment may demonstrate deliberate indifference. See, e.g., Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009) ("...delayed medical treatment can constitute a manifestation of deliberate indifference.") (citing Estelle, 429 U.S. at 104-05). Here, Walker first complained about the knot in his mouth in November 2009, but he was not seen by an ENT doctor until February 2010 and was not seen by an oral surgeon until March 26, 2010. The oral surgeon ordered a biopsy to be done "as soon as possible." See Mot. to Dismiss Ex. 11 at 1, ECF No. 22-11. Based on these facts, summary judgment is inappropriate at this juncture because there is a dispute as to the material fact of when and how the defendants made efforts to secure an ENT or oral surgeon to evaluate Walker's condition. Therefore, defendants Dr. Marquette Williams, Dr. Hercules, and Pam Smith's Motions for Summary Judgment will be denied, and these defendants will be given thirty (30) days to file supplemental briefs and/or renewed motions for summary judgment addressing this issue.

---

[3] Notably, "a 'serious ... medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (citations omitted). Walker's allegations satisfy this standard. Therefore, to the extent that defendants intend to argue that Walker has not presented sufficient facts to demonstrate that he had a serious medical need, the argument is unconvincing.

### IV. Plaintiff's Motions

Walker filed a Motion to Amend Response to Plaintiff's Request for Documents, in which he requests copies of medical request forms, doctor's orders, and a transportation order. Defendants filed a Motion in Opposition to plaintiff's motion, explaining that they provided a response to Walker's original request for these documents on May 13, 2011. In the Motion to Amend, Walker asks "that the objection made by the defendants concerning these documents be overruled." See Mot. to Am. at 2, ECF No. 56. Based on the defendants' Motion in Opposition, it appears that Walker was provided all available discovery that he has requested.[4] Therefore, his Motion to Amend Response to Plaintiff's Request for Documents will be denied, without prejudice to renewal within thirty (30) days if Walker explains in greater detail what materials he is seeking that he has not received.[5]

Walker also filed his fourth Motion to Appoint Counsel. For the same reasons stated in the September 20, 2010 Order, this Motion will be denied.

### V. Conclusion

Accordingly, Conmed Healthcare Management's Motion to Dismiss will be granted, and Dr. Marquette Williams, Dr. Hercules, and Pam Smith's Motions to Dismiss/Motion for Summary Judgment will be denied without prejudice. Walker's Motion to Amend Response to

---

[4] Defendants attached copies of the medical request forms and doctor's orders to the Motion in Opposition. See Mot. in Opp'n at 5-13, ECF No. 58-2. Defendants state that no transportation order exists for the date Walker mentions in his motion. See Mot. in Opp'n at 2, ECF No. 58.

[5] Walker filed on Opposition to defendants' Motion in Opposition, in which he again requests a copy of the transportation order and explains its relevance to this case. See Pl.'s Opp'n at 2-3, ECF No. 59. Defendants have explained that no such transportation order exists. Based on Walker's statements, he appears to agree. See Mot. to Am. at 2, ECF No. 56 ("Plaintiff requested copies of the transportation order showing he had a follow-up with Dr. Morrison on 4/24/10, which would be impossible because plaintiff never left the jail so follow-up could not have taken place.").

Plaintiff's Request for Documents and Motion to Appoint Counsel will be denied, without prejudice. An appropriate Order and judgment shall issue.

Entered this 4th day of August 2011.

Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge