IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

Marcus Walker,               )
    Plaintiff,         )
                    )
v.                      )     1:10cv889 (AJT/TRJ)
                    )
Williams, et al.,         )
    Defendants.      )

MEMORANDUM OPINION

Marcus Walker, a Virginia inmate proceeding pro se, filed this action pursuant to 42

U.S.C. § 1983, alleging the defendants exhibited deliberate indifference to his serious medical

needs relating to the treatment of a tumor in his mouth.  In his initial complaint, plaintiff named

Conmed Healthcare Management, Doctor Warren Hercules, Nurse Pam Smith, and Marquette

Williams as defendants.  By Memorandum Opinion and Order dated August 4, 2011, the Court

granted Conmed Healthcare Management's Motion to Dismiss and/or Motion for Summary

Judgment.  However, the Court denied defendants Hercules, Smith, and Williams' Motions for

Summary Judgment, finding a dispute existed as to the material fact of when and how the

defendants made efforts to secure an ENT or oral surgeon to evaluate Walker's condition.  The

Court granted the defendants thirty days to file a supplemental brief and/or renewed motion for

summary judgment addressing the issue.  Defendants have now filed a Supplemental Brief

supporting their previous Motions for Summary Judgment and Walker has filed a Brief in

Opposition to the Supplemental Brief.  For the reasons discussed below, defendants' Motion for

Summary Judgment will be granted.

## I.  Background

Plaintiff Marcus Walker was an inmate at Chesapeake Correctional Center in Chesapeake, Virginia from October 5, 2009 until June 22, 2010, when he was moved to Mecklenburg Correctional Center in Boydton, Virginia.  Mem. Op. 2, ECF No. 60.  During an October 23, 2009 visit with Doctor Sharpe, the dentist providing care to inmates at Chesapeake Correctional Center, plaintiff complained of tooth sensitivity in the area near teeth 6 through 9. Hercules Aff. at 1.  Doctor Sharpe noted that Walker may have had an ameoblastoma, which is a rare tumor associated with tooth development.  Id.; Ex. 2, ECF No. 64.

Walker visited Doctor Sharpe again on November 17, 2009, raising the same complaint of sensitivity.  Hercules Aff. at 1; Ex. 2, ECF No. 64.  Walker informed Doctor Sharpe he had been to Chesapeake General Hospital ("CGH") for this issue in "about 2004."  Hercules Aff. at 2;  Ex. 2, ECF No. 64.  Walker signed a patient release of information form so Doctor Sharpe could obtain access to Walker's medical records from CGH.  Hercules Aff. at 2; Ex. 2, ECF No. 64.  Doctor Sharpe again indicated in his notes that Walker might have a "benign cyst" in the area of teeth 6-9. Hercules Aff. at 2; Ex. 2, ECF No. 64.

Doctor Sharpe's review of Walker's CGH medical record revealed that in March 2005 Walker had a CT of the area of his mouth that was presently causing him discomfort.  Hercules Aff. at 2.  The CT scan report from CGH indicated that Walker had a multicompartmental expansile complex cystic lesion.  Id.  At the time of the CGH scan, the lesion involved teeth 8 and 9 as well as the root tips of teeth 3 through 9 and it extended into the sinus cavity.  Id.; Supp. Br. at 3.  CGH recommended a follow up MRI, but Walker never had one.  Hercules Aff. at 2; Supp. Br. at 3.

2

On December 1, 2009, after reviewing Walker's previous medical records, Doctor Sharpe submitted a specialist referral form indicating that Walker should have a follow up evaluation with an ENT or an oral surgeon. Ex. 2, ECF No. 64. Doctor Sharpe consulted with Doctor Hercules on the issue, and both concluded that emergency treatment of Walker was not necessary at the time. Both believed it was extremely unlikely the condition was a malignant disease or a cancerous growth because Walker "would have been very sick by December, 2009, if the tumor evidenced in May[1] 2005 had been cancerous and/or infectious and left untreated for four and a half years." Hercules Aff. at 3. Doctor Hercules, however, did agree with Doctor Sharpe's recommendation for a follow-up evaluation. Id.

Because Walker's previous CT scan was over four years old, Doctor Hercules concluded an updated CT scan would be necessary before a specialist could make any recommendations for appropriate care. Id. at 3. Doctor Hercules ordered a new CT scan for Walker on December 3, 2009 and it was performed on December 16, 2009. Id.; Ex. 6, ECF No. 64. Doctor Hercules received notice of the CT results about seven to ten days after it was performed, which according to Doctor Hercules is the normal time frame in which he would receive reports associated with non-urgent/non-emergency conditions. Hercules Aff. at 3. The CT report indicated Walker had an expansile bony mass among the right upper teeth and extending into the sinus. Ex. 6, ECF No. 64.

On December 30, 2009 Doctor Hercules ordered an appointment for Walker with Dr. Prillaman, the oral surgeon suggested by Doctor Sharpe. Id. at 3; Ex. 7, ECF No. 64. Although Prillaman treated inmates previously, he was unwilling to do so any longer after a previous

---

[1] Doctor Hercules' Affidavit is internally inconsistent regarding the date of Walker's earlier CT scan. Hercules first states the CT scan occurred in March 2005 and later refers to the same CT scan as occurring in May 2005. Because the issue is not dispositive in the outcome of the case, the Court need not resolve the exact month in which the CT scan occured.

inmate's family frequently called Dr. Prillaman at his home and after hours. Hercules Aff. at 4. Doctor Hercules did not receive word of this until on or before January 11, 2010. Id. On January 11, 2010, Doctor Hercules contacted Dr. Keyes, an ENT, and asked whether Doctor Keyes would be willing to evaluate Walker. Id.; Ex. 9, ECF No. 64. After learning Walker's background, Keyes agreed and Doctor Hercules scheduled an appointment for February 16, 2010. Hercules Aff. at 4. Doctor Keyes evaluated Walker and suggested that Walker's CT scans be obtained and forward to Doctor Morrison, an oral surgeon. Hercules Aff. at 4; Ex. 10, ECF No. 64.

On February 17, 2010, Doctor Hercules ordered an appointment for further evaluation with Doctor Morrison, so Doctor Hercules forwarded Walker's 2009 CT scan and relevant medical records to Doctor Morrison. Hercules Aff. at 4; Ex. 11, ECF No. 64. Doctor Morrison, who did not regularly treat inmates, agreed to see Walker on March 26, 2010. Hercules Aff. at 4. Doctor Morrison performed an excisional biopsy of the mass in Walker's mouth on April 1, 2010. Id.; Ex. 13, ECF No. 64. Walker alleges that after the surgery he experienced "undue pain and suffering, and loss of large section of gum area, tissue behind face and nasal canal, and dental damage." See Compl. at 19, ECF No. 1.

The results of the biopsy sample were provided to Doctor Morrison on April 24, 2010 at which time Doctor Morrison reviewed the findings with Walker and explained to Walker that he was suffering from a benign ameloblastoma. Ex. 12, ECF No. 64. Doctor Morrison noted that he arranged an appointment with Doctor Dan Karakla, who would call Doctor Hercules for follow up. Id. Doctor Morrison concluded that Walker would need definite treatment if the mass were a tumor. Id.

Doctor Dan Karakla evaluated Walker on May 25, 2010 and determined that Walker would require a partial plate as a result of his tooth loss and reconstructive surgery as well as tissue grafting and possible hospitalization. Doctor Krakla wrote Doctor Morrison and advised "maxillofacial CT along with head." See Mot. to Dismiss at 9, ECF No. 22. Based on the information provided by Doctor Karakla, Doctor Hercules requested an additional evaluation of Walker by Doctor Robert Kenny. Id.

## II. Standard of Review

In reviewing the Motion for Summary Judgment by defendants, courts must view the facts in the light most favorable to the party opposing the motion. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Summary judgment is appropriate where "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine" issue of material fact is present "if the evidence is such that a reasonable jury could . . . return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "When a motion for summary judgment is made and supported . . . [by affidavits], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment. Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir. 1994); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988).

### III. Analysis

To state a claim of inadequate medical care that rises to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105 (1976); see also Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, a plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. Second, he must allege deliberate indifference to that serious medical need. Under this second prong, an assertion of mere negligence or malpractice is not enough to state a constitutional violation; instead, plaintiff must allege and demonstrate "[d]eliberate indifference . . . by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see also Estelle, 429 U.S. at 106. In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851 (citations omitted).

A delay in medical treatment may demonstrate deliberate indifference. See Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009) (citing Estelle, 429 U.S. at 104-05). A constitutional violation only occurs, however, if the delay results in some "substantial harm" to the patient. Thus, in addition to alleging that the medical need was objectively serious, the plaintiff must also show that the delay in the provision of medical care resulted in an objectively "substantial harm" in order to establish an Eighth Amendment violation. See Webb v. Hamidullah, 281 Fed. App'x. 159, 166 (4th Cir. 2008) (unpublished decision); Shabazz v. Prison Health Servs., No. 3:10cv190, 2011 WL 2489661, at *6 (E.D. Va. Aug. 9, 2011). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain."

6

Shabazz, 2011 WL 2489661, at *6; see also, Webb, 281 Fed. App'x at 167 (substantial harm may be evidenced by an "marked increase in hernia[] size, frequent complaints of severe pain, or signs that [] hernia was becoming non-reducible").

In this case, the Court will assume that Walker's tumor constitutes a serious medical need.[2] However, Walker's claim fails because the record demonstrates that the defendants did not recklessly delay Walker's treatment. See Shabazz, 2011 WL 3489661, at *7 n.12 ("A plaintiff may prove deliberate indifference by introducing evidence that a defendant recklessly . . . delayed . . . providing a plaintiff with access to medical care."). To the contrary, the record establishes that the doctors did not ignore Walker's complaints of tooth sensitivity. Instead, he was seen by Doctor Sharpe on two occasions and Doctor Hercules immediately scheduled an updated CT scan after Doctor Sharpe recommended Walker see an outside specialist. Soon after receiving the results of the CT, Doctor Hercules attempted to secure an appointment for Walker with an outside specialist. Any perceived delay by Walker in the making of an appointment with a specialist was not the result of Doctor Hercules' deliberate indifference. Rather, it was the result of the difficulty he experienced in finding an outside specialist willing to treat Walker. Furthermore, although Walker may believe that treatment of his medical problem should have been expedited, Doctor Hercules and Doctor Sharpe agreed that Walker's condition did not warrant emergency treatment. This sort of medical judgment is beyond the scope of judicial review. See Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) ("Questions of medical judgment are not subject to judicial review."). Thus, Walker has failed to offer evidence

---

[2] A "serious . . . medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." See Iko v. Shreve, 535 F.2d 225, 241 (4th Cir. 2008) (internal citations and quotations omitted).

sufficient to demonstrate that Doctor Hercules acted with the requisite culpable state of mind when treating Walker's medical condition.

Additionally, the record demonstrates that Nurse Smith and defendant Williams also do not bear liability in this matter. According to Doctor Hercules affidavit, neither Nurse Smith nor defendant Williams were qualified to evaluate Walker in regard to the tumor in his mouth or make any determinations as to the timing of care for Walker. Hercules Aff. at 5. Plaintiff argues in his Opposition to the defendants' Supplemental Brief that Williams exhibited deliberate indifference by failing to promptly schedule a post-op surgery for Walker because Walker's surgery occurred on April 1, 2010 and he did not see Doctor Karakla until May 25, 2010. However, Doctor Morrison did not recommend that Walker see Doctor Karakla until April 24, 2010, the day on which Doctor Morrison received and evaluated Walker's biopsy results. Furthermore, nothing in the record demonstrates that the delay between the time Doctor Morrison suggested a visit with Doctor Karakla and the time the appointment was actually scheduled was so long as to "shock the conscious" or that Williams deliberately delayed making the appointment. See Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

However, even if Williams did deliberately delay making the appointment, Walker fails to offer facts sufficient to satisfy the third prong required in delay in medical treatment cases, which is evidence that he suffered an "objectively substantial harm" from the delay in time between his surgery and his post-op follow up. Webb v. Hamidullah, 281 Fed. App'x 159, 166 (4th Cir. 2008). The only harm Walker states he suffered during his wait to see Doctor Karakla is "unnecessary damage by still growing or expanding tumor destroying surrounding tissue." Opp. Supp. Br. at 4. However, the tumor was removed on April 1, 2010 according to Doctor Morrison's report. Ex. 13, ECF No. 64. Thus, Walker could not have experienced an additional

substantial harm from the tumor growing during the time between his surgery and the time he saw Doctor Karakla.

## IV. Conclusion

For the foregoing reasons, defendants' Motions for Summary Judgment will be granted, and summary final judgment will be entered in their favor. An appropriate order and judgment shall issue.

Entered this _18th_ day of _Oct._ _____ 2011.

Alexandria, Virginia

_____
Anthony J. Trenga
United States District Judge